Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:   (949) 258-5081

*Attorney for Plaintiff,*
Backgrid USA, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BACKGRID USA, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BB BODY. INC., a California Corporation; BROOKE BURKE, an individual, and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No.  2:23−cv−06392 SPG (MAAx)<br><br>**NOTICE OF MOTION AND JOINT BRIEF RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Joint Appendix of Facts, Joint Appendix of Evidence, and Proposed Order filed concurrently herewith]**<br><br>**Date:　　July 24, 2024**<br>**Time:　　1:30 PM**<br>**Crtrm:　　5C** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Wednesday July 24, 2024, at 1:30 p.m., or as soon thereafter as this matter can be heard before the Honorable Sherilyn Peace Garnett at First Street Courthouse, 350 West 1st Street, Courtroom 5C, Los Angeles, California 90012, Plaintiff Backgrid USA, Inc. ("Backgrid" or "Plaintiff") will and hereby does move this Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on its claim against Defendants Brooke Burke and BB Body, Inc. ("Defendants") for copyright infringement because there is no genuine issue of material fact that Defendants infringed three photographs owned by Backgrid. Backgrid also moves for partial summary judgment on each of Defendants' remaining affirmative defenses because Defendants cannot raise a genuine issue of material fact as to each. Backgrid moves on unclean hands and express/implied license.

This Motion is based upon this Notice of Motion, the concurrently filed Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Joanna Ardalan, and evidence therein, the pleadings and all documents filed with the Court, and arguments presented at the hearing.

Pursuant to Local Rule 7-3, the parties met and conferred by Zoom on May 22, 2024, and had additional, earlier calls and email correspondence regarding the issues raised in this motion.

Dated: June 12, 2024                     **ONE LLP**


                                         By: /s/ Joanna Ardalan
                                              Joanna Ardalan
                                              Peter R. Afrasiabi

                                              *Attorneys for Plaintiff,*
                                              Backgrid USA, Inc.

---

**JOINT BRIEF RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.   **INTRODUCTION** ......................................................................... **1**
    A.   Plaintiff's Introduction ....................................................... 1
    B.   Defendants' Introduction ..................................................... 1

II.  **STATEMENT OF FACTS** ......................................................... **2**
    A.   Plaintiffs' Statement of Facts ............................................. 2
       1.   Backgrid USA, Inc. ("Backgrid") ......................... 2
       2.   Defendants Brooke Burke and BB Body, Inc. ........ 2
    B.   Defendants' Statement of Facts .......................................... 3
       1.   BackGrid USA, Inc. ............................................... 3
       2.   Defendants Brooke Burke and BB Body, Inc. ........ 3

III. **LEGAL STANDARD** ................................................................. **4**
    A.   Plaintiff's Legal Standard ................................................... 4
    B.   Defendants' Legal Standard ................................................ 5

IV.  **ANALYSIS** ................................................................................ **7**
    A.   IT IS UNDISPUTED THAT DEFENDANTS DIRECTLY INFRINGED BACKGRID'S COPYRIGHTS .................. 7
       1.   It Is Undisputed that Backgrid Owns the Copyrights at Issue .............. 7
       2.   Defendant Admits It Infringed Backgrid's Photos When It ................. 8
       3.   Defendants' Response ............................................ 9
    B.   BACKGRID IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE DEFENSES ........ 9
       1.   Defendants Cannot Meet Their Burden on Unclean Hands ................. 9
       2.   Defendants Cannot Meet Their Burden on Express/Implied License .. 10
       3.   There are Genuine Issues of Material Fact as to Unclean Hands ........ 11
       4.   Implied License ..................................................... 16

V.   **CONCLUSION** ......................................................................... **16**
    A.   Plaintiff's Conclusion ....................................................... 16
    B.   Defendants' Conclusion ..................................................... 16

**JOINT BRIEF RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Cases**

*21 Survivor Prods. LLC v. Fox Broad. Co.*,
    No. CV01–3234 LGB (SHX), 2001 WL 35829270 (C.D. Cal. June 12,
    2001) ...............................................................................5, 9, 11, 12

*A & M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ...........................................................7

*Addisu v. Fred Meyer*,
    198 F.3d 1130 (9th Cir. 2000) ...........................................................5

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).........................5

*Asset Marketing Sys. Inc. v. Gagnon*,
    542 F. 3d 748 (9th Cir. 2008) ..........................................................11

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548 (1986)..................................................4

*Certified Neutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*,
    2018 U.S. Dist LEXIS 114729 (S.D. Cal. Case No. 3:16-cv-02810, July 10,
    2018) ...........................................................................................14

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
    25 Cal. 4th 387 (2001) ....................................................................6

*Dream Games of Arizona, Inc. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009) ...........................................................10

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
    826 F.2d 837 (9th Cir. 1987) .............................................................9

*Interscope Records, Mowtown Record Co., L.P. v. Time Warner, Inc.*,
    2010 U.S. Dist. LEXIS 151460 (C.D. CA. Case No. 10-1663 June 28,
    2010) ...........................................................................................6

*Kendall-Jackson Winery, Ltd. v. Superior Court*,
    76 Cal. App. 4th 970 (1999) ............................................................7

*Los Angeles New Service v. Tullio*,
    973 F. 2d 791 (9th Cir. 1992) .......................................................9, 14

ii

*Malibu Media v. Doe*,
  2014 U.S. Dist. LEXIS 79889 (E.D. Mich. Case No. 13-11432 June 12, 2014) ............................................................................................... 6

*McDermott v. Citizens J. Enters*,
  LLC, 2023 U.S. Dist. LEXIS 230307 (C.D. Cal. Case No. CV 23-4200 PA, Nov. 9, 2023) ............................................................................... 15

*Metal Jeans, Inc. v. Metal Sport, Inc.*,
  987 F.3d. 1242 (9th Cir. 2021) .................................................................. 5

*Michael Grecco Productions, Inc.v. Aintitcool.Com*,
  *2024 U.S. Dist. LEXIS 70764* (C.D. Cal. Case No. 2:23-cv-05365 March 1, 2024) .................................................................................................. 15

*Midwestern Cattle Mktg. L.L.C. v Legend Bank N.A.*,
  800 Fed Appx. 239 (5th Circuit 2020) ...................................................... 14

*Mon Cheri Bridals, LLC. v. Cloudflare, Inc.*,
  2021 U.S. Dist. LEXIS 65446 (N.D. Cal. Case No. 19-CV-01356, April 1, 2021) ........................................................................................................ 15

*Motschenbacher v. R.J.Reynods Tobacco Co.*,
  498 F.2d 821 (9th Cir.1974) ....................................................................... 6

*Novelty Textile Mills, Inc. v. Joan Fabrics Corp*,
  558 F.2d 1093 (2d Cir. 1977) ..................................................................... 8

*POM Wonderful LLC. v. Coca Cola Co.*
  166 F.Supp. 3d 1085 (C.D. Cal. 2016) ................................................. 5, 6

*Taylor v. List*,
  880 F.2d 1040 (9th Cir. 1989) .................................................................. 5

*Three Boys Music Corp. v. Bolton*,
  212 F. 3d 477 (9th Cir. 2000) .................................................................... 8

*Timed Out LLC. v. Youbabian, Inc.*
  229 Cal. App. 4th 1001 (2014) ................................................................. 6

*Watson Music Grp. LLC v. Unreal Promotions, Inc.*
  2024 U.S. Dist. LEXIS 37778 (C.D.Cal. Case No. CV 23-02091, March 4, 2024) .......................................................................................................... 15

iii

**Statutes**

17 U.S.C. § 106 ................................................................................................ 7

17 U.S.C. §201 ............................................................................................ 7, 8

17 U.S.C. § 410 ................................................................................................ 8

17 U.S.C. § 504(c) ........................................................................................... 7

Cal. Civ. Code § 3344 ................................................................................ 6, 13

Copyright Act .................................................................................................. 7

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................................... 4

**JOINT BRIEF RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# I.    INTRODUCTION

## A. PLAINTIFF'S INTRODUCTION

This is a clear case of copyright infringement. There is no dispute that Backgrid USA, Inc., one of the world's largest celebrity photograph agencies, owns the three photos that were slavishly copied on Defendants Brooke Burke and BB Body, Inc.'s social media properties. Defendants do not dispute that it operates and controls its social media accounts and does not dispute that it uploaded the photos. When the parties met and conferred on the issue of infringement, Defendants considered stipulating to infringement but ultimately decided that they would prefer that BackGrid do the legal work in drafting its argument but that they would "not oppose" the motion. (UF 12)

In addition, Defendant alleges two affirmative defenses, unclean hands, express or implied license, but those defenses are unsupported by evidence and Defendants will never meet their burden in proving those defenses. (The remaining defenses alleged in the answer have been disposed of by stipulation. *See* Dkt. 36.) Backgrid respectfully requests that the Court order summary judgment on its copyright infringement claim and each of Defendant's affirmative defenses.

## B.    DEFENDANTS' INTRODUCTION

Defendants BB Body, Inc. ("BB Body") and Brooke Burke ("Burke") state as follows: this case involves three photographs (out of over 6700) posted to Burke's personal and professional Instagram accounts ("the Photos"). Michael Simon, an expert in the field, estimates the standard licensing fee for the Photos at $2.50, each at today's prices and less than 7 dollars each at 2020 prices. Neither Burke nor BB profited from posting the photographs. Plaintiff BackGrid USC, Inc ("BackGrid") suffered no actual damages either. Thus, BackGrid is asking for a full jury trial (and its attorney fees) in a case that involves between $7.50 and $21.00 of copyright infringement.

BackGrid's case stands on weak foundations, however, because the Photos are all photographs of Burke herself. They are not newsworthy. They were taken without her knowledge, permission or consent by photographers who invaded her privacy and

**JOINT BRIEF RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Backgrid—which is not a news organization—has unclean hands because it violated Burke's rights of privacy and publicity by profiting from her image without compensating her. BackGrid, which has already reaped its ordinary profit from these unauthorized photographs, is here because it wants an additional windfall recovery (and attorney fees) from Burke herself when it never got her permission to take the photographs that form the basis of its claims here.

## II.   STATEMENT OF FACTS

### A.   PLAINTIFFS' STATEMENT OF FACTS

#### 1.   Backgrid USA, Inc. ("Backgrid")

Backgrid owns and operates one of Hollywood's largest celebrity photograph agencies that has earned a reputation of regularly breaking scoops on sought after celebrity news. It owns the intellectual property rights, including the copyrights, to celebrity photographs that have been licensed to numerous top-tier outlets, such as TMZ, Entertainment Tonight, New York Post, People Magazine, Huffington Post, the Daily Mail, as well as many television stations, newspapers and other prominent media outlets throughout the world. Each license has been granted for valuable consideration, up to hundreds of thousands of dollars.

At issue in this lawsuit are three photographs ("Photos") that Defendants willfully infringed on their social media accounts, Instagram.com/brookburke and Instagram.com/brookeburkebody. Indeed, even after BackGrid filed suit, and after additional notice from BackGrid that two of the three photographs were still live, Defendants did not bother to take down the photos until around May 22, 2024. It is undisputed that Backgrid owns each of the three Photographs that Defendants distributed, publicly displayed, and reproduced on their social media accounts. (UF 1, 2.) Each photograph was timely registered with the United States Copyright Office. (UF 3.)

#### 2.   Defendants Brooke Burke and BB Body, Inc.

Defendant Brooke Burke is a celebrity fitness personality, television personality, author, and actress. She established herself as a health and wellness guru and formed

Defendant BB Body, Inc., doing business as Brooke Burke Body, to further promote her brand. They provide subscriptions to workout programs and individual workout videos. (UF 4) In addition, Defendants control and operate tremendously popular social media accounts, including Instagram.com/brookburke and Instagram.com/brookeburkebody. (UF 5) At the time the complaint was filed the former account had about 558,000 followers and the latter has about 103,000 followers. Each account promotes the Brooke Burke Body brand and redirects users to a login and payment screen to purchase a Brooke Burke Body fitness subscription. (UF 6)

### B. DEFENDANTS' STATEMENT OF FACTS

#### 1. BackGrid USA, Inc.

BackGrid is a serial copyright litigator– the company has filed 83 lawsuits, 60 of which were filed in the past four years. Makman Public Dec. at ¶ 5.[1] BackGrid purchased the photographs at issue in this lawsuit from paparazzi (*i.e.*, photographers who took these photographs without Burke's consent) and sold or licensed them to a widely-read Internet news publication called Daily Mail. BackGrid did this knowing that these Photographs would be widely distributed over social media and without taking steps to prevent copying or to notify the public that they intended to enforce their copyrights.

#### 2. Defendants Brooke Burke and BB Body, Inc.

Defendant Brooke Burke is a celebrity fitness personality, television personality, author, and actress. She established herself as a health and wellness guru and, in 2017, formed Defendant BB Body, Inc., doing business as Brooke Burke Body, to further promote her brand. She has been operating her Brooke Burke Instagram for over a decade, and her Brook Burke Body Instagram since around 2018. In 2020, when Burke posted the Photos to Instagram, she had did not have enough followers on either her personal or her corporate account to monetize those accounts. She has posted thousands of photographs to her Instagram over the 10+ years that she has been on Instagram. The three posts at issue

---

[1] The term "Makman Public Dec." refers to the publicly filed Declaration of David Alan Makman in Opposition to BackGrid's Motion for Summary Judgment.

here had little or no impact, as can be seen from Exhibit A to the Complaint, which shows 952 likes, 791 likes, and 2,278 likes, respectively.

The Photos were taken without Burkes knowledge or consent. Burke was not paid anything by the photographers for these photographs. Burke Dec.[2] at ¶ 18.

BackGrid licensed the Photos to Daily Mail and, therefore, has already made its customary profit from them. See, Makman Confidential Dec. at ¶¶ 1-7.[3]

Michael Simon, an expert who has personal knowledge of the market value of photographs of Brooke Burke, estimates that, at today's prices, these photographs would sell to Daily Mail for $2.59 each. Simon Dec. at ¶ 14.[4] In 2020, around the time that Burke posted the Photos to her Instagram, Daily Mail paid Simon less than $10.00 per photograph for an exclusive set of private photographs of Burke with her daughters, in her backyard pool, in bathing suits. *Id.* at ¶¶ 14-18. Simon has opined that the Photos are not exceptional, and that they would not have been able to command even that price.[5]

## III. LEGAL STANDARD

### A. PLAINTIFF'S LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party has the burden of proof and meets its initial burden, the nonmoving party must identify specific facts, drawn from the materials on file, that show that an issue is genuinely disputed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548 (1986). A nonmoving party cannot avoid summary judgment by

---

[2] "Burke Dec." refers to the Declaration of Brooke Burke that is being filed along with this motion.
[3] The term Makman Confidential Dec. refers to the Confidential Declaration of David A. Makman that is being filed under seal along with this motion.
[4] "Simon Dec." refers to the Declaration of Michael Simon that is being filed along with this motion.
[5] On June 10, 2024, the eve of this motion, BackGrid provided a confidential interrogatory response stating the price that it claims it actually received for the sales of the bundles of photographs from which these photographs were taken. See Makman Confidential Dec. at Ex. 1.

relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Likewise, a scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Id*.

## B.   DEFENDANTS' LEGAL STANDARD

 Summary judgment is only available when, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. *Metal Jeans, Inc. v. Metal Sport, Inc.*, 987 F.3d. 1242, 1244 (9th Cir. 2021) (reversing in part and remanding when district court failed to view the evidence in light most favorable to the non-moving party and dismissed unclean hands defense.) Here it would not be appropriate to dismiss the unclean hands defense on summary judgment if one views the evidence in the light most favorable to Burke and BB Body.

As BackGrid admits in its papers, the elements of unclean hands are: (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *21 Survivor Prods. LLC v. Fox Broad. Co.*, No. CV01–3234 LGB (SHX), 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001)(relied on by Plaintiff in this action). Thus, Burke and BB must show that the complained-of conduct is directly related to the transaction concerning which the complaint is made, *i.e.*, that it "pertains to the very subject matter involved and affect(s) the equitable relations between the litigants." *POM Wonderful LLC. v. Coca Cola Co.* 166 F.Supp. 3d 1085, 1096 (C.D. Cal. 2016)(finding a health advertisement claim sufficiently related to a false advertising claim to be properly

invoked as a basis for the affirmative defense of unclean hands.)[6] In addition, an unclean hands defense can be based on a statutory violation. *Id.* at 1099 ("Well-accepted general principles of equity support [the] contention that a statutory violation gives a party unclean hands.").

Here, the underlying statutory violation is invasion of privacy and/or violation of Burke's right of publicity.

Article I, Section 1 of the California constitution guarantees the right of privacy in California., and the invasion of an individual's right of privacy has long been an actionable tort. *Motschenbacher v. R.J.Reynods Tobacco Co.,* 498 F.2d 821 (9th Cir.1974)(Identifying four categories of invasion of privacy.) The publicity right is part of the right of privacy and is further protected by statute. Specifically:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent … shall be liable for any damages sustained by the person or persons injured as a result thereof.

California Civil Code Section 3344. It is a violation of this statute to take a photograph of a celebrity and profit from it without bothering to get permission. See, *e.g., Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2001)(Finding that the Defendant violated Sectoin 3344 by improperly using the likeness of the Three Stooges). The case law indicates that the statute is specifically intended to prevent others from misappropriating the economic value generated through the merchandising of the likeness of a person as BackGrid is doing here. *Timed Out LLC. v. Youbabian, Inc.* 229 Cal. App. 4th 1001, 1005-6 (2014)(Vacating judgment on the pleadings in favor of defendant on § 3344 claim.)

---

[6] *See also Malibu Media v. Doe*, 2014 U.S. Dist. LEXIS 79889 at *8 (E.D. Mich. Case No. 13-11432 June 12, 2014)(declining to strike an unclean hands defense when the facts related in part to the copyright infringement claims.) *Interscope Records, Mowtown Record Co., L.P. v. Time Warner, Inc.*, 2010 U.S. Dist. LEXIS 151460 (C.D. CA. Case No. 10-1663 June 28, 2010)(declining to strike unclean hands defense.)

6

The statutory violations that forms the basis of Burke and BB's unclean hands analysis is directly relevant not only to the claim of Copyright Infringement but also to the determinations of willfulness and of "just" statutory damages under the Copyright Act. Statutory damages are set at "as the court considers **just**." 17 U.S.C. § 504(c)(emphasis added). Because the statute puts "justice" at issue, it stands to reason that unclean hands—which is a defense that requires the court balance the equities as if it were operating the scales of justice—is available as a defense. Indeed, other courts have pointed out that the unclean hands doctrine promotes justice. See *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 978 (1999)("The unclean hands doctrine protects judicial integrity and promotes justice.")

Burke and BB Body have pled unclean hands defense as a defense to copyright infringement, but also as the mechanism to demonstrate that statutory damages, if awarded, should be set at the statutory minimum. It would unjust to give BackGrid a windfall recovery when that recovery is based on BackGrid's misappropriation of economic value that was created by Burke herself. Such misappropriation is prohibited by statute.

## IV.    ANALYSIS

### A.    IT IS UNDISPUTED THAT DEFENDANTS DIRECTLY INFRINGED BACKGRID'S COPYRIGHTS

"To establish a prima facie case of direct copyright infringement, a plaintiff (1) must show ownership of the allegedly infringed material and (2) must demonstrate that the alleged infringers committed an act of 'copying' the material by violating at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001). Those rights under Section 106 include the right to reproduce, distribute, publicly display, perform, or create derivative works of the copyrighted work. 17 U.S.C. § 106.

#### 1.    It Is Undisputed that Backgrid Owns the Copyrights at Issue

Copyright in a work protected under [Title 17] vests initially in the author [] of the work." 17 U.S.C. §201(a). In any judicial proceedings the certificate of a registration made

before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate. 17 U.S.C. § 410. "The ownership of a copyright may be transferred in whole or in part by any means of conveyance []."17 U.S.C. §201(d). Backgrid USA, Inc. timely registered the photographs at issue and, therefore, all facts stated on the copyright registration are given prima facie weight including statements regarding ownership as stated in the certificates. (UF 3.) Each of the works was validity transferred from the photographer to Backgrid prior to Backgrid's registration. (UF 7.). Defendants cannot show that the ownership of the Photos is in dispute.

### 2. Defendant Admits It Infringed Backgrid's Photos When It Displayed and Reproduced the Photos on Its Social Media Accounts

Infringement can be proven by showing direct evidence of copying, or absent such proof, plaintiff can show defendant had access to the work and that the two works are "substantially similar." *Three Boys Music Corp. v. Bolton,* 212 F. 3d 477, 481 (9th Cir. 2000). "Proof of access requires an opportunity to view or to copy plaintiff's work;" it requires a mere "reasonable opportunity" or "reasonably possibility" of viewing the work. *Id.* at 482. With regard to the identical works, if there is "slavish copying" of the infringed work, a substantial similarity analysis is unnecessary. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp*, 558 F.2d 1093 n.4 (2d Cir. 1977).

This is the rare case of copyright infringement which is open and shut. Because Defendants simply reproduced an exact copy of Plaintiff's Photos, the substantial similarity analysis is unnecessary. (UF 1, 2.) Regardless, access and substantial similarity are also conceded by Defendants who admit they infringed the Photos. Specifically, in their interrogatory responses they describe how "Brooke Burke was reviewing the news on her phone and found an article about her. She took a screenshot and posted it to an Instagram account. Two of these photos were posted to the BB Body Instagram, and one was to her personal Instagram." (Rog 2) (UF 8.)

There is no triable issue of fact relating to Defendants' copyright infringement of the Photos.

### 3.    Defendants' Response

Burke and BB are not opposing summary judgment on the issue of copyright infringement.[7] In addition, they agree to withdraw the implied license defense. However, Defendants do intend to present an unclean hands defense based on BackGrid's inequitable conduct, which was in clear violation of a statute.

## B.    BACKGRID IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE DEFENSES

### 1.    Defendants Cannot Meet Their Burden on Unclean Hands

"To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *21 Survivor Prods. LLC v. Fox Broad. Co.*, No. CV01–3234 LGB (SHX), 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001); *see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987) ("To prevail, the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims."). Unclean hands is "rarely effective, and is properly denied when the "plaintiff's transgression is of an … inconsequential nature." *Los Angeles New Service v. Tullio,* 973 F. 2d 791, 799 (9th Cir. 1992).

"As Professor Nimmer has written, the defense of illegality or unclean hands is 'recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action. For instance, the defense

---

[7] Because Defendants would not provide a certified copy of the materials deposited with the Copyright Office, Defendants, asked Plaintiff to file this motion and accompany it with a declaration under penalty of perjury as to the contents of the deposit on file at the Copyright Office. This will allow us to verify without paying the high fees associated with getting a certified copy on an expedited basis and will preserve Burkes rights in the event that the registrations are not valid. In that regard, if it later turns out that the deposits are not as represented under penalty of perjury, *i.e.*, that the photos at issue here are not the same as the ones that were deposited, Defendants reserve the right seek appropriate relief at that time.

has been recognized when plaintiff misused the process of the courts by falsifying a court order or evidence, or by misrepresenting the scope of his copyright to the court and opposing party. '"*Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 990–91 (9th Cir. 2009) (quoting Nimmer on Copyright § 13.09[B]).

Defendants were asked to produce all documents supporting or relating to the unclean hands defense. Defendants have not produced any documents that could plausibly be related to the unclean hands defense. (UF 9.) Throughout this litigation, Defendants have not provided any plausible theory as to how BackGrid has engaged in inequitable conduct or engaged in any transgression. This affirmative defense should be stricken.

### 2.   Defendants Cannot Meet Their Burden on Express/Implied License

<u>There Is No Express License Between the Parties</u>

BackGrid and Burke never communicated about the photographs and Burke did not receive any license from BackGrid. Defendants were expressly asked by interrogatory for the facts supporting their contention that an express or implied license was created between them and BackGrid for use of the Photos. Defendants responded that "those photographs were posted publicly with no copy protection and no notification that the copyright holder was reserving any rights." (UF 10) Not only is this contention not true, it is also irrelevant. The lack of copy protection or notification information does not create a license, express or otherwise. Regardless, Defendants downloaded at least two of the photographs from Daily Mail, which includes copyright management information by crediting "BACKGRID" within the photo.[8] (UF 11) At the very least, that means Burke cropped the credit information from her downloaded copy or otherwise cropped out the BACKGRID credit and uploaded them to her Instagram. None of this amounts to an express (or implied) license.

<u>There Is No Implied License Between the Parties</u>

---

[8] Defendants do not even know where they downloaded the third Burke photograph.

10

An implied license is found when "a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work. *Asset Marketing Sys. Inc. v. Gagnon,* 542 F. 3d 748, 754-77 (9th Cir. 2008). There is no evidence that the photographs were created at the request of Defendants, that BackGrid delivered the photographs to Defendants, and that BackGrid communicated its intent for Defendants to distribute the photographs. (UF 13) Among other things, there are no communications between Defendants and BackGrid or its agents about the photographs and Defendants found the photographs when "reviewing the news on [Burke's] phone and found an article about her. [Burke] took a screenshot and posted it to an Instagram account." (UF 12) Those circumstances cannot amount to Burke's request that BackGrid create the work. After all, Ms. Burke found them online. They do not amount to delivery by BackGrid to Burke, because she "took a screenshot." Moreover, there are no communications between in the parties in which BackGrid gave Burke permission to upload the photos.

### 3.    There are Genuine Issues of Material Fact as to Unclean Hands

<u>BackGrid Violated a Statute</u>

BackGrid has correctly stated the elements of an unclean hands defense. The elements are: "(1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *21 Survivor Prods. LLC v. Fox Broad. Co.*, No. CV01–3234 LGB (SHX), 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001).

However, unclean hands is an equitable defense and in a small case like this one, the bar for unclean hands is nowhere near as high as BackGrid would have the court believe. Burke and BB do not have to show an antitrust violation or copyright misuse or fraud as BackGrid seems to be arguing they do. Rather, Defendants only need to show "inequitable conduct", *i.e.*, a violation of a statute, that is related to the copyrights asserted in this action. The violation here is blatant. The "inequitable conduct" alleged here—invasion of privacy

11

and/or the right of publicity—is undoubtedly a statutory violation that is directly related to the copyrights both because these are photographs of Burke and because BackGrid did not have Burke's consent when it sold the photographs of her.

<u>The Balance of the Equities Favors Burke</u>

Burke has clean hands compared to BackGrid. Neither Burke nor BB made money from posting these photographs. Burke Dec. at ¶ 18. Burke was not paid for posting these photographs. *Id.* Nor did she make any measurable profits indirectly from these posts as she was not have enough followers to monetize her Instagram back then. *Id.* Also, Burke, who controls the two Instagram accounts, has taken the photographs down, so willfulness is not properly at issue. Moreover, Burke has modified her conduct—she is now more careful when she posts. Burke Dec. at ¶¶ 10-11.[9] In fact, Burke has obtained written permission to post photographs to Instagram from the photographer that she works with most often on an exclusive basis. *Id.* at Ex. A. As such, she has taken commercially reasonable steps to avoid copyright infringement.

In contrast, BackGrid has unclean hands. These photographs of Burke (one even includes her daughter). They were taken without Burke's consent, knowledge or permission. As such, when the photographers took these photographs, they invaded Burke's privacy (and her daughter's) and they violated Burke's right to her own image. Burke has not been compensated in any way for these violations.[10] BackGrid, for its part, profited from these violations.

BackGrid's conduct was inequitable because it was in violation of a statute. Specifically:

---

[9] Burke has easy access to photographs of herself without any need to infringe copyright. She has permission to post to Instagram from Michael Simon, Burke Dec. Ex. A.

[10] BackGrid's photographs are disseminated to millions of people without clear notice that it intends to rigorously enforce its copyrights. BackThe company is a serial litigator that has filed 83 lawsuits. If BackGrid were awarded a windfall each time, such awards would only encourage more suits rather than encouraging them to take reasonable commercial steps to prevent the unauthorized use of their photographs.

12

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent … shall be liable for any damages sustained by the person or persons injured as a result thereof.

California Civil Code Section 3344.

BackGrid knowingly used Burkes likeness in selling products (i.e., the photographs) for profit without her prior consent. As to injury, Burke sustained the same injury that BackGrid is claiming here – BackGrid's sale of these photographs to Daily Mail interfered with Burke's ability to control and market her own intellectual property, including her image and/or photographs of herself that she owned.[11] She did not have any opportunity to ask for compensation from BackGrid because BackGrid sold the photographs without contacting her in advance. Nor did she have the chance to offer better composed, more complimentary, photographs of herself to the Daily Mail.

Further, BackGrid did not take commercially reasonable steps to avoid the injury that it complains about. BackGrid could (and should) have reached out *before* filing suit to inform Burke of its concerns about copyright infringement. At that time, they should have reached out and asked her to take the posts down. They could have requested a payment without filing suit.[12] If they had done so, the matter could likely have been resolved amicably. BackGrid did not bother with that approach but chose litigation, in the hopes of reaping a larger windfall through intimidation.

Moreover, BackGrid, which made its full and ordinary profit on these photographs by selling them to Daily Mail. Nor did BackGrid require Daily Mail to take steps to prevent

---

[11] The injury to Burke is greater than the injury to BackGrid in the sense that the 140 photographs that BackGrid sold were professional quality full body shots that were distributed to millions. The 3 photographs on Burke's Instagram were cropped such that no professional company would want to republish them and had a much smaller number of potential viewers. As such, her posts did not represent any colorable threat to BackGrid's potential future licensing of those photos. Simon Dec. at ¶ 26.

[12] At trial, Burke and BB will show that, even the minimum statutory damages of $750.00 is more than adequate given the low standard licensing fees for these Photos.

**JOINT BRIEF RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

the public from copying the photographs to social media—we have been informed that there is no written agreement between BackGrid and Daily Mail at all. Yet, BackGrid knew full well that the photographs would be published by the Daily Mail—a company that reaches millions of viewers who can copy freely.

Anyone releasing photographs publicly on the Internet knows (or should know) that, absent clear notice and/or protection, those photographs will be copied and posted to social media accounts. BackGrid must have been aware of this in 2020 when it sold the photographs to Daily Mail for profit. If BackGrid were truly concerned about the potential injury that might arise from copyright infringement relating to these photographs, it would have asked Daily Mail to include clear copyright notices and implement software based copyright protection.

<u>BackGrid's Case Law Does not Refute Unclean Hands</u>

BackGrid cites *Los Angeles News Service v. Tullio,* 973 F. 2d 791, 799 (9th Cir. 1992) for the proposition that unclean hands is "rarely effective, and is properly denied when the "plaintiff's transgression is of an … inconsequential nature." However, unclean hands sounds in equity and requires the Court to balance the equities. See e.g. *Certified Neutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, 2018 U.S. Dist LEXIS 114729 (S.D. Cal. Case No. 3:16-cv-02810, July 10, 2018)("Determining whether the doctrine of unclean hands precludes relief requires balancing the alleged wrongdoing of the Plaintiff against that of the Defendant."); *Midwestern Cattle Mktg. L.L.C. v Legend Bank N.A.*, 800 Fed Appx. 239, 246 (5th Circuit 2020)(reversing district court ruling for failing to balance the equities of an unclean hands defense). The posts at issue here were an inconsequential infringement. As such, when the Court balances the harm to BackGrid against BackGrid's violation of Burke's rights, the Court (or the jury) will conclude that BackGrid has unclean hands.

The infringement by Burke was every bit as "inconsequential" as the infringement by BackGrid because these Photos have so little value. In that regard, courts typically apply a multiple of the standard licensing fee to set statutory damages as a way to achieve

14

deterrence without giving an improper windfall to the copyright holder. As a rule of thumb, a three-times multiplier is common, with a five-times multiplier to be applied in cases of willful infringement. *Michael Grecco Productions, Inc.v. Aintitcool.Com, 2024 U.S. Dist. LEXIS 70764 at \*7-8* (C.D. Cal. Case No. 2:23-cv-05365 March 1, 2024)(Examining appropriate range of statutory damages in a default judgment case).[13] A statutory damages award that is too high compared to the standard licensing fee would be an impermissible windfall. See, *e.g.*, *Mon Cheri Bridals, LLC. v. Cloudflare, Inc.*, 2021 U.S. Dist. LEXIS 65446 \*6-7 (N.D. Cal. Case No. 19-CV-01356, April 1, 2021)(Indicating that statutory damages should bear some kind of relationship to actual damages); *McDermott v. Citizens J. Enters*, LLC, 2023 U.S. Dist. LEXIS 230307 \*4-5 (C.D. Cal. Case No. CV 23-4200 PA, Nov. 9, 2023)(finding that statutory damages should be set at an amount that does not provide a windfall.); *Watson Music Grp. LLC v. Unreal Promotions, Inc.* 2024 U.S. Dist. LEXIS 37778 (C.D.Cal. Case No. CV 23-02091, March 4, 2024)(Holding that statutory damages must have a plausible relationship to Plaintiff's actual damages).

Here the standard licensing for the photographs at today's prices is $2.50 each. *See* Simon Dec. As such, even if infringement were willful—which Defendants deny—5 times that the standard licensing fee would be $12.50. For three photographs, that's $37.50. Even at $7.00 per photograph, which is Michael Simon's high-end estimate of standard licensing fees for mundane photographs of this sort, this would be a $21.00 case, and, at 5 times that, even if the court finds willful infringement the damages would be $105.00. Against such a low baseline, virtually any statutory violation of Burke's rights would be sufficiently consequential to justify an unclean hands defense.

<u>Burke's Claims are Adequately Supported by Discovery</u>

BackGrid, by claiming that Burke has not produced documents in support of its unclean hands defense, seems to be arguing that it has not had adequate discovery. This is

---

[13] BackGrid may try to distinguish the *Michael Greco* case because it was a default judgment case. But that distinction is not persuasive. Burke has appeared in this action in good faith, and should not be put in a position where, because she did so, damages are somehow higher than they would have been if she had simply allowed default judgment.

not so. The defense does not particularly require documents, as should be apparent from the discussion above. Notably, BackGrid didn't serve any Interrogatory relating to unclean hands and, therefore, has no basis for claiming that Burke withheld discovery on this defense, see Makman Public Dec. at Ex 2.

The motion to dismiss the unclean hands defense should be denied because there are material issues of fact. Note that unclean hands is an equitable defense and does not go to a jury. Burke and BB will be filing a motion asking for an early hearing on the unclean hands issue in the hopes of resolving this matter without the undue expense of a jury trial. Given how small this case is, resolving it on the papers would be beneficial to everyone involved.

### 4. Implied License

BB and Burke withdraw this affirmative defense.

## V. CONCLUSION

### A. PLAINTIFF'S CONCLUSION

Backgrid USA, Inc. respectfully requests that the Court grant this motion in full.

### B. DEFENDANTS' CONCLUSION

The motion to dismiss the unclean hands defense should be denied because there are material issues of fact. Unclean hands is an equitable defense and does not need to go to a jury. Burke and BB will be filing a motion asking for an early hearing on the unclean hands issue in order to resolve this matter without the undue expense of a jury trial.

Dated: June 12, 2024                    **ONE LLP**


                                        By: _/s/ Joanna Ardalan_____
                                            Joanna Ardalan

                                            *Attorney for Plaintiff*,
                                            Backgrid USA, Inc.

**JOINT BRIEF RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Dated: June 12, 2024                    **LAW OFFICES OF DAVID A. MAKMAN**


                                        */s/David A. Makman*
                                        David A. Makman

                                        *Attorney for Defendants,*
                                        BB Body, Inc. and Brooke Burke


## ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4(2)(i)

Pursuant to Local Rule 5-4.3.4(2)(i), I, Joanna Ardalan, attest that all other signatories listed and on whose behalf the filing is submitted concur in this filing's content and have authorized this filing.

                                        /s/ Joanna Ardalan
                                        Joanna Ardalan

**JOINT BRIEF RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff BACKGRID USA, INC., certifies that this brief contains 5,568 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 12, 2024                    By: _/s/ Joanna Ardalan_
                                        Joanna Ardalan

1

**CERTIFICATE OF COMPLIANCE**